UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 05-30074-MAP

05-30074 MAP

TAMMY WALKER,
    Plaintiff

v.

CITY OF HOLYOKE,
    Defendant

## COMPLAINT

### PARTIES

1. Plaintiff, Tammy Walker ("Walker"), is a natural person with a residence in Holyoke, Hampden County, Massachusetts.

2. Defendant, City of Holyoke (the "City") is a municipality located in, and existing under the laws of, the Commonwealth of Massachusetts, with municipal offices at 536 Dwight Street, Holyoke, Hampden County, Massachusetts.

### FACTS

3. Walker is an African American.

4. Walker is a lesbian.

5. Walker is a female.

6. In or around April of 1993, Walker was hired by the City's Police Department (the "Department").

7. On or around June 20, 1999, the former Mayor of Holyoke, Daniel Szostkiewicz, bypassed Walker and selected Joseph Garcia for promotion to the position of permanent full-time sergeant.

8. On or around October 15, 1999, Walker filed a charge of discrimination against the City with the Massachusetts Commission Against Discrimination ("MCAD")

1

and the Equal Employment Opportunity Commission ("EEOC"), alleging that the City discriminated against her when it bypassed her for promotion to sergeant. Walker also appealed her bypass to the Civil Service Commission.

9. In or around May of 2000, Walker and the City entered into an agreement to settle the MCAD and EEOC charge of discrimination and the civil service appeal ("Settlement Agreement"). In the Settlement Agreement, the City agreed to place Walker at the top of the eligibility list for the next promotion to sergeant. Additionally, the City agreed that upon Walker's appointment to sergeant, her seniority date would be adjusted to June 9, 1999.

10. On or around May 5, 2002, Walker was promoted to the position of full-time permanent sergeant. Pursuant to the Settlement Agreement, Walker's seniority date was to be adjusted to June 9, 1999.

11. Soon after her promotion to sergeant, Walker began having problems with other officers, including but not limited to Sergeant John Monaghan ("Sgt. Monaghan") and Sargent Garcia.

12. For instance, Sgt. Monaghan made comments with sexual and racial connotations over the police radio when Walker ended a radio transmission. During one such incident, Sgt. Monaghan changed his pronunciation to imitate an African American dialect and said, "lick it, lick it, good."

13. Walker also heard Sgt. Monaghan make racist remarks about others. For example, Sgt. Monaghan referred to Chief Anthony Scott, an African American, as "Uncle Charlie."

14. Additionally, Walker observed Sgt. Monaghan change his grammar and pronunciation to imitate an African American dialect when speaking about African Americans. For instance, Walker heard Sgt. Monaghan say "Uncle Charlie done come out wit (with) anutter (another) order."

15. In or around June of 2002, Walker began to make complaints to her superiors about the discriminatory and harassing behavior of Sgt. Monaghan and Sgt. Garcia.

16. Despite Walker's complaints, Sgt. Monaghan continued engaging in discriminatory and harassing behavior.

17. For instance, Sgt. Monaghan regularly referred to Walker as "Tyrone," a stereotypical African American, male name.

18. Sgt. Monaghan also stated that Walker should not be a sergeant because of her lesbian lifestyle.

2

19. In or around October of 2002, Sgt. Monaghan leaned over Walker and sang "You shouldn't go sticking your tongue where it don't belong."

20. After Sgt. Monaghan sang this offensive song, Walker complained again to her superiors.

21. Walker also complained to Chief Scott about the discriminatory and harassing behavior of Sgt. Monaghan on several occasions.

22. At Chief Scott's suggestion, Walker spoke to Cpt. Fletcher about the discriminatory and harassing behavior of Sgt. Monaghan. During this conversation, Cpt. Fletcher acknowledged that he was aware that other officers were unhappy about Walker's seniority because of her gender and race. Cpt. Fletcher told Walker that if she pursued any action against Sgt. Monaghan, others in the department might retaliate against her for bringing an action against a fellow officer.

23. Cpt. Fletcher also said that Walker's problems with Sgt. Monaghan were brought about because she obtained an "incorrect" seniority date through the settlement of her charge of discrimination and civil service appeal. Cpt. Fletcher told Walker that she could end the problems by "correcting" her seniority date.

24. On or around October 24, 2002, Walker filed a complaint with the Department regarding the discriminatory and harassing behavior of Sgt. Monaghan.

25. On or around December 2, 2002, Walker filed a charge of discrimination with the MCAD and EEOC, against the Department regarding the actions of Monaghan and other employees of the Department. Walker complained that the Department had discriminated against her based on her gender, color, and sexual orientation, and interfered with her exercise and enjoyment of her civil rights.

26. On or around December 4, 2004, the Department received a statement from another officer who heard some of the discriminatory comments made by Sgt. Monaghan. Nevertheless, the Department decided that Walker's complaints against Sgt. Monaghan were "unfounded."

27. In or around June of 2003, Walker verbally reported to her supervisor that several members of the Department had refused to leave a pub after closing, in violation of the law ("Pub Incident Report").

28. After no action was taken as a result of her Pub Incident Report, Walker notified Chief Scott of what she believed was the illegal conduct that she reported in the Pub Incident Report.

29. In or around August of 2003, Chief Scott retaliated against Walker for notifying him about the possible illegal activity she reported in the Pub Incident Report. Chief Scott issued a written reprimand stating that Walker had been insubordinate when she notified him of the Pub Incident report.

30. In or around April of 2004, Chief Scott suspended Walker from work for one (1) day for appearing five to fifteen minutes late for court. Chief Scott partially justified this suspension based on the retaliatory written reprimand that he issued in August of 2003. Other employees of the Department were not similarly disciplined for arriving at court five to fifteen minutes late.

31. In upholding the one (1) day suspension, the Mayor of Holyoke, Michael Sullivan, also mentioned the retaliatory written reprimand for insubordination in August, 2003.

32. In or around September of 2004, Walker filed a written complaint with her supervisor, which stated that Sgt. Monaghan was ignoring her while they are performing their duties and verbally assaulting her. Walker stated that she believed that Sgt. Monaghan's insubordinate conduct posed a risk to her own safety and the safety of others.

33. Less than two (2) weeks after Walker complained about Sgt. Monaghan and her safety concerns, Mayor Sullivan doubled a five (5) day suspension that had been issued earlier to Walker by Chief Scott.

34. In or around November of 2004, Walker noticed that she was not hearing any dispatch calls over her car radio or hand held radio and, as a result, did not know where her subordinates were in the field.

35. Walker believed that her supervisor, Lieutenant Eva O'Connell, had ordered the dispatchers to send calls via email, which would preclude Walker from hearing them. Walker believed that this practice posed a serious risk to the health and safety of the police officers and the public as well as herself.

36. On or around November 4, 2004, Walker made a report to Chief Scott regarding the practice of sending dispatch calls via email (the "Dispatch Email Report"). Walker expressed her belief that such a practice was unsafe for the police officers and the public as well as herself.

37. On or around November 10, 2004, within days of Walker's report to Chief Scott about the dispatch calls, Lt. O'Connell retaliated against Walker by reprimanding her about her failure to utilize the chain of command and reassigning her to inside duty.

4

38. On or around November 20, 2004, Lt. O'Connell denied a request for a day off which Walker had submitted several days earlier so that she could care for an ill family member.

39. Additionally, on November 20, 2004, Lt. O'Connell requested that Chief Scott place Walker on the sick leave abuser's list.

40. In or around the end of November of 2004, Chief Scott suspended Walker for five (5) days for sick leave abuse. At the end of December of 2004, Mayor Sullivan increased this five (5) days suspension issued to ten (10) days.

41. On or around December 20, 2004, Walker filed a complaint with Chief Scott about Lt. O'Connell's November 10th order that reassigned Walker to inside duty (the "Retaliatory Inside Assignment Complaint").

42. In the Retaliatory Inside Assignment Complaint, Walker indicated that she believed that Lt. O'Connell had violated the law.

43. On or around January 18, 2005, Chief Scott retaliated against Walker for making complaints, including the Dispatch Email Report and the Retaliatory Inside Assignment Complaint, by suspending Walker for five (5) days.

44. On or around February 15, 2005, Walker provided the City with written notice that it's retaliatory activities, policies, and/or practices were in violation of the Massachusetts Whistleblower Statute, Massachusetts General Laws, Chapter 149, Section 185. See Whistleblower Notice, dated February 15, 2005, attached hereto as Exhibit A.

45. Walker requested and obtained a right to sue letter from the EEOC on January 11, 2005.

## COUNT I - DISCRIMINATION BASED ON GENDER
### (G.L. Ch. 151B)

46. Paragraphs 1 through 46 are repeated, reiterated and realleged as if fully set forth herein.

47. The City intentionally discriminated against Walker on the basis of her gender.

48. The actions and conduct of the City, through its officials, agents and/or employees, violated Mass. Gen. Laws ch. 151B, § 4 (1)

49. As a result, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

5

## COUNT II - DISCRIMINATION BASED ON GENDER
## (42 U.S.C. §2000)

50. Paragraphs 1 through 50 are repeated, reiterated and realleged as if fully set forth herein.

51. The City intentionally discriminated against Walker on the basis of her gender.

52. The actions and conduct of the City, through its officials, agents and/or employees, violated title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

53. As a result, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT III - DISCRIMINATION BASED ON RACE
## (G.L. Ch. 151B)

54. Paragraphs 1 through 54 are repeated, reiterated and realleged as if fully set forth herein.

55. The City intentionally discriminated against Walker on the basis of her race.

56. The actions and conduct of the City, through its officials, agents and/or employees, violated Mass. Gen. Laws ch. 151B, § 4 (1)

57. As a result, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT IV - DISCRIMINATION BASED ON RACE
## (42 U.S.C. §2000)

58. Paragraphs 1 through 58 are repeated, reiterated and realleged as if fully set forth herein.

59. The City intentionally discriminated against Walker on the basis of her race.

60. The actions and conduct of the City, through its officials, agents and/or employees, violated title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

61. As a result, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT V - DISCRIMINATION BASED ON SEXUAL ORIENTATION
### (G.L. Ch. 151B)

62. Paragraphs 1 through 24 are repeated, reiterated and realleged as if fully set forth herein.

63. The City intentionally discriminated against Walker on the basis of her sexual orientation.

64. The actions and conduct of the City, through its officials, agents and/or employees, violated Mass. Gen. Laws ch. 151B, § 4 (1)

65. As a result, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT VI: RACIAL HARASSMENT
### (G.L. Ch. 151B)

66. Walker repeats and reallaeges the allegations contained in paragraphs 1 through 40 as if full set forth herein.

67. The actions and conduct of the City, through its officials, agents, and/or employees, created a hostile work environment for Walker based on her race, in violation of Mass. Gen. Laws ch. 151B.

68. The hostile environment was sufficiently severe and pervasive as to interfere with Walker's ability to perform her duties and responsibilities.

69. As a result of the above-described actions, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT VII: RACIAL HARASSMENT
### (42 U.S.C. §2000)

70. Walker repeats and reallaeges the allegations contained in paragraphs 1 through 70 as if full set forth herein.

71. The actions and conduct of the City, through its officials, agents, and/or employees, created a hostile work environment for Walker based on her race, in violation of title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

72. The hostile environment was sufficiently severe and pervasive as to interfere

with Walker's ability to perform her duties and responsibilities.

73. As a result of the above-described actions, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

### COUNT VIII: SEXUAL HARASSMENT
### (G.L. Ch. 151B)

74. Walker repeats and reallaeges the allegations contained in paragraphs 1 through 74 as if full set forth herein.

75. The actions and conduct of the City, through its officials, agents, and/or employees, created a hostile work environment for Walker based on her sex, in violation of Mass. Gen. Laws ch. 151B.

76. The hostile environment was sufficiently severe and pervasive as to interfere with Walker's ability to perform her duties and responsibilities.

77. As a result of the above-described actions, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

### COUNT IX: SEXUAL HARASSMENT
### (42 U.S.C. §2000)

78. Walker repeats and reallaeges the allegations contained in paragraphs 1 through 78 as if full set forth herein.

79. The actions and conduct of the City, through its officials, agents, and/or employees, created a hostile work environment for Walker based on her sex, in violation of title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

80. The hostile environment was sufficiently severe and pervasive as to interfere with Walker's ability to perform her duties and responsibilities.

81. As a result of the above-described actions, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress

### COUNT X: HARASSMENT BASED ON SEXUAL ORIENTATION
### (G.L. Ch. 151B)

82. Walker repeats and reallaeges the allegations contained in paragraphs 1 through

82 as if full set forth herein.

83. The actions and conduct of the City, through its officials, agents, and/or employees, created a hostile work environment for Walker based on her sexual orientation, in violation of Mass. Gen. Laws ch. 151B.

84. The hostile environment was sufficiently severe and pervasive as to interfere with Walker's ability to perform her duties and responsibilities.

85. As a result of the above-described actions, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT XI: RETALIATION
## (42 U.S.C. §2000)

86. Walker repeats and realleges the allegations contained in paragraphs 1 through 86 as if fully set forth herein.

87. Walker engaged in protected activities, including but not limited to opposing practices made unlawful by Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

88. The City, through its officials, agents, and/or employees, illegally retaliated against Walker for engaging in activities protected by title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

89. The City's retaliatory actions and conduct violate title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

90. As a result, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT XII: RETALIATION
## (G.L. Ch. 151B)

91. Walker repeats and realleges the allegations contained in paragraphs 1 through 91 as if fully set forth herein.

92. Walker engaged in protected activities, including but not limited to opposing practices made unlawful by Mass. Gen. Laws ch. 151B.

93. The City, through its officials, agents, and/or employees, illegally retaliated against Walker for engaging in activities protected by Mass. Gen. Laws ch.

151B.

94. The City, through its agents, employees and servants, also attempted to coerce, intimidate, threaten and interfere with Walker's exercise of her rights granted or protected by Mass. Gen. Laws ch. 151B.

95. The City's actions and conduct violate Mass. Gen. Laws ch. 151B, §§ 4(4) and 4(4A).

96. As a result, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT XIII: RETALIATION
### (G.L. Ch. 149 §185)

97. Walker repeats and realleges the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

98. Walker engaged in protected activities, including but not limited to disclosing activities, policies and practices which Walker reasonably believed were violations of the law, or a rule or regulation promulgated pursuant to law; and disclosing activities, policies and practices which Walker reasonably believed were posing a risk to public health and safety.

99. The City, through its officials, agents, and/or employees, illegally retaliated against Walker for engaging in activities protected by the Massachusetts Whistleblower Statute, Mass. Gen. Laws ch. 149, Section 185.

100. The City's actions and conduct violate Mass. Gen. Laws ch. 149, Section 185.

101. As a result, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT XIV - DISCRIMINATION BASED ON RACE
### (42 U.S.C. §1981)

102. Paragraphs 1 through 102 are repeated, reiterated and realleged as if fully set forth herein.

103. The City intentionally discriminated against Walker on the basis of her race.

104. The actions and conduct of the City, through its officials, agents and/or

employees, violated title 42 U.S.C. § 1981.

105. As a result, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT XV - RETALIATION BASED ON EXERCISE OF FIRST AMENDMENT RIGHTS
## (42 U.S.C. §1983)

106. Paragraphs 1 through 106 are repeated, reiterated and realleged as if fully set forth herein.

107. Walker engaged in speech activities which were protected by the First Amendment of the United States Constitution.

108. The City, through its officials, agents, and/or employees, retaliated against Walker for engaging in speech activities protected by the First Amendment of the United States Constitution.

109. The City's actions and conduct violate 42 U.S.C. § 1983.

110. As a result, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.

WHEREFORE, the Plaintiff, Tammy Walker, hereby respectfully requests that this Honorable Court:

1. Enter judgment in her favor on all Counts of the Complaint;
2. Award compensatory damages;
3. Award punitive damages;
4. Award multiple damages under Mass. Gen. Laws ch. 149, Section 185;
5. Award reasonable attorney's fees and costs;
6. Award appropriate interest; and
7. Award any other relief which this Court deems to be appropriate.

11

The Plaintiff, Tammy Walker
By Her Attorney

*Tani E. Sapirstein*
Tani E. Sapirstein, Esq.
BBO #236850
SAPIRSTEIN & SAPIRSTEIN, P.C.
1341 Main Street, 3rd Floor
Springfield, MA 01103
Tel:   (413) 827-7500
Fax:   (413) 827-7797

Date:  March 29, 2005

K:\WP61\CASEFILE\Walker\complaint.wpd

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Walker, Tammy

### DEFENDANTS
City of Holyoke

**(b)** County of Residence of First Listed Plaintiff **Hampden**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed **Hampden**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Tani E. Sapirstein (413)827-7500
SAPIRSTEIN & SAPIRSTEIN, P.C.
1341 Main Street - 3rd Floor
Springfield, MA 01103

Attorneys (If Known)
Carol Sakowski Lynch
MORRISON, MAHONEY & MILLER, LLP
1500 Main Street, Ste. 2400
Springfield, MA 01115-5387

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | **PERSONAL PROPERTY** | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | ☐ 863 DIW C/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☒ 442 Employment / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / Habeas Corpus: | | **FEDERAL TAX SUITS** | |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 535 Death Penalty | | | |
| ☐ 290 All Other Real Property | ☒ 440 Other Civil Rights / ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 USC § 2000 - discrimination in employment based on race

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE
DOCKET NUMBER

DATE: 3/29/05
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __Walker v City of Holyoke__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

    ___ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    _X_ II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,     *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.        for patent, trademark or copyright cases

    ___ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

    ___ IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

    ___ V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES ☐   NO ☑

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES ☐   NO ☑
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES ☐   NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES ☐   NO ☑

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES ☑   NO ☐

    A. If yes, in which division do all of the non-governmental parties reside?
       Eastern Division ☐   Central Division ☐   Western Division ☑

    B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
       Eastern Division ☐   Central Division ☐   Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES ☐   NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Tani Sapirstein__
ADDRESS __1341 Main St, Springfield, MA 01103__
TELEPHONE NO. __827-7500__

Coversheetlocal.wpd - 10/17/02