### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

**Civil Action No.: 05-30074-MAP**

| | |
|---|---|
| **TAMMY WALKER,** | ) |
| **Plaintiff** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **CITY OF HOLYOKE,** | ) |
| **Defendant** | ) |
| | ) |

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

Plaintiff, Tammy Walker ("Walker") hereby moves this Court, pursuant to Federal Rule of Civil Procedure 15(a), for leave to amend her Complaint to allege additional allegations of unlawful retaliation under Massachusetts General Laws Chapters 151B and 149 §185, and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.). For the convenience of this Court, a copy of the Proposed Amended Complaint is attached hereto as Exhibit "A".

As grounds in support of this Motion, the Plaintiff states as follows:

### Facts

On or around February 15, 2005, Walker provided the City of Holyoke (the "City") with her first written notice that the City's retaliatory activities, policies, and/or practices were in violation of the Massachusetts Whistleblower Statute, Massachusetts General Laws, Chapter 149, Section 185. Walker complained that she had been retaliated against by superior officers for making complaints about behavior which Walker reasonably believed to be in violation of the law and a potential danger to the public safety. Walker requested that the City correct its unlawful actions.

1

On or around February 25, 2005, Lieutenant Eva O'Connell, Walker's direct supervisor, acted in a hostile and aggressive manner towards Walker. As Lt. O'Connell was one of the superior officers about whom Walker had complained, Walker believed that Lieutenant O'Connell's actions were retaliatory. On or around February 27, 2005, Walker filed a complaint with Chief Scott alleging that Lieutenant O'Connell engaged in retaliatory behavior and injured Walker in a physical confrontation. Walker also expressed concern for her physical safety.

On or about March 7, 2005, Mayor Michael Sullivan held a hearing on a retaliatory five (5) days suspension that was issued by Chief Anthony Scott to Walker on January 18, 2005. In the January 18, 2005 suspension, Chief Scott had suspended Walker for making complaints about her superior officers. Chief Scott also requested that Mayor Sullivan consider additional disciplinary action against Walker. On or about March 18, 2005, Mayor Sullivan affirmed a retaliatory five (5) days suspension issued by Chief Scott and added an additional and extraordinarily harsh suspension of fifteen (15) unpaid days.

On or around March 29, 2005, Walker filed her complaint against the City in the United States District Court for the District of Massachusetts, alleging various claims including violations of Mass. Gen. Laws Ch. 151B, the Massachusetts Whistleblower Statute (Mass. Gen. Laws Ch. 149 §185), Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), and violations of her rights under the First Amendment of the United States Constitution. One week later, Chief Scott again suspended Walker for five (5) days in connection with her complaint of February 27, 2005. On or around April 12, 2005, Mayor Sullivan held a hearing on this suspension despite Walker's request for a continuance. On or around April 18, 2005, Mayor Sullivan terminated Walker's employment. Mayor Sullivan's termination of Walker occurred less than three weeks after Walker filed her complaint against the City with the U.S. District Court. This retaliatory action against Walker violates several laws, including but not limited to Mass. Gen. Laws Ch. 151B, the Massachusetts Whistleblower Statute (Mass. Gen. Laws Ch.

2

149 §185) and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

On May 4, 2005, Walker provided the City with her second written notice that the above-described retaliatory activities, policies, and/or practices were in violation of the Massachusetts Whistleblower Statute, Massachusetts General Laws, Chapter 149, Section 185. Walker requested that the City correct its unlawful actions.

## Argument

Fed. R. Civ. P. 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." The City engaged in additional retaliatory actions, as described above and as alleged in the proposed amended complaint, after Walker provided her first written notice to the City pursuant to the Massachusetts Whistleblower Statute. Walker's last suspension and termination did not occur until after Walker filed her complaint in this Court. As a result, Walker did not include these allegations in her original complaint in this Court. Walker has brought this motion to amend her complaint to include these additional allegations.

The proposed amendment to Walker's complaint does not require an additional administrative charge with the Equal Employment Opportunity Commission. In Cuddyer v. The Stop & Shop Supermarket Co., 434 Mass. 521, 531 n.8 (2001), the Massachusetts Supreme Judicial Court recognized that incidents which occur after the plaintiff has filed her charge at the Massachusetts Commission Against Discrimination are properly considered by the superior court judge. Similarly, in Smith v. Mitre Corp., 949 F. Supp. 943, 948 (D. Mass. 1997), the Court held that requiring an additional filing with administrative agencies regarding subsequent retaliation would only increase costs and delay final resolution. All of the additional retaliatory actions described in the proposed amended complaint occurred after Walker filed her administrative charge and received her right to sue letter from the Equal Employment Opportunity Commission. As a result, justice requires that Walker be permitted to amend her complaint to include these new allegations which had not occurred prior to the filing of the original complaint

3

but are related to her original claims.

WHEREFORE, Tammy Walker, hereby moves to amend her complaint, as proposed in Exhibit "A",  pursuant to Fed. R. Civ. P. Rule 15(a).

Respectfully submitted,
The Plaintiff, Tammy Walker
By Her Attorney,

By:  Tani E. Sapirstein, Esq.
BBO# 236850
SAPIRSTEIN & SAPIRSTEIN, P.C.
1341 Main Street, 3rd Floor
Springfield, MA 01103
Tel:    (413) 827-7500
Fax:    (413) 827-7797

Date: June 8, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the following via first class mail, postage prepaid to :

Carole Sakowski Lynch, Esq.
Morrison, Mahoney & Miller, LLP
1500 Main Street, Suite 2400
P.O. Box 15387
Springfield, MA 01115-5387

Tani E. Sapirstein

Date: June 8, 2005

K:\WP61\CASEFILE\Walker\Motion to amend.wpd

4

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**Civil Action No.**

| | |
|---|---|
| **TAMMY WALKER,** | ) |
| **Plaintiff** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **CITY OF HOLYOKE,** | ) |
| **Defendant** | ) |
| | ) |

## PROPOSED AMENDED COMPLAINT

### PARTIES

1.  Plaintiff, Tammy Walker ("Walker"), is a natural person with a residence in Holyoke, Hampden County, Massachusetts.

2.  Defendant, City of Holyoke (the "City") is a municipality located in, and existing under the laws of, the Commonwealth of Massachusetts, with municipal offices at 536 Dwight Street, Holyoke, Hampden County, Massachusetts.

### FACTS

3.  Walker is an African American.

4.  Walker is a lesbian.

5.  Walker is a female.

6.  In or around April of 1993, Walker was hired by the City's Police Department (the "Department").

7.  On or around June 20, 1999, the former Mayor of Holyoke, Daniel Szostkiewicz, bypassed Walker and selected Joseph Garcia for promotion to the position of permanent full-time sergeant.

8.  On or around October 15, 1999, Walker filed a charge of discrimination against the City with the Massachusetts Commission Against Discrimination ("MCAD")

and the Equal Employment Opportunity Commission ("EEOC"), alleging that the City discriminated against her when it bypassed her for promotion to sergeant. Walker also appealed her bypass to the Civil Service Commission.

9.  In or around May of 2000, Walker and the City entered into an agreement to settle the MCAD and EEOC charge of discrimination and the civil service appeal ("Settlement Agreement"). In the Settlement Agreement, the City agreed to place Walker at the top of the eligibility list for the next promotion to sergeant. Additionally, the City agreed that upon Walker's appointment to sergeant, her seniority date would be adjusted to June 9, 1999.

10. On or around May 5, 2002, Walker was promoted to the position of full-time permanent sergeant. Pursuant to the Settlement Agreement, Walker's seniority date was to be adjusted to June 9, 1999.

11. Soon after her promotion to sergeant, Walker began having problems with other officers, including but not limited to Sergeant John Monaghan and Sargent Garcia.

12. For instance, Sgt. Monaghan made comments with sexual and racial connotations over the police radio when Walker ended a radio transmission. During one such incident, Sgt. Monaghan changed his pronunciation to imitate an African American dialect and said, "lick it, lick it, good."

13. Walker also heard Sgt. Monaghan make racist remarks about others. For example, Sgt. Monaghan referred to Chief Anthony Scott, an African American, as "Uncle Charlie."

14. Additionally, Walker observed Sgt. Monaghan change his grammar and pronunciation to imitate an African American dialect when speaking about African Americans. For instance, Walker heard Sgt. Monaghan say "Uncle Charlie done come out wit (with) anutter (another) order."

15. In or around June of 2002, Walker began to make complaints to her superiors about the discriminatory and harassing behavior of Sgt. Monaghan and Sgt. Garcia.

16. Despite Walker's complaints, Sgt. Monaghan continued engaging in discriminatory and harassing behavior.

17. For instance, Sgt. Monaghan regularly referred to Walker as "Tyrone," a stereotypical African American, male name.

18. Sgt. Monaghan also stated that Walker should not be a sergeant because of her lesbian lifestyle.

2

19. In or around October of 2002, Sgt. Monaghan leaned over Walker and sang "You shouldn't go sticking your tongue where it don't belong."

20. After Sgt. Monaghan sang this offensive song, Walker complained again to her superiors.

21. Walker also complained to Chief Scott about the discriminatory and harassing behavior of Sgt. Monaghan on several occasions.

22. At Chief Scott's suggestion, Walker spoke to Cpt. Fletcher about the discriminatory and harassing behavior of Sgt. Monaghan. During this conversation, Cpt. Fletcher acknowledged that he was aware that other officers were unhappy about Walker's seniority because of her gender and race. Cpt. Fletcher told Walker that if she pursued any action against Sgt. Monaghan, others in the department might retaliate against her for bringing an action against a fellow officer.

23. Cpt. Fletcher also said that Walker's problems with Sgt. Monaghan were brought about because she obtained an "incorrect" seniority date through the settlement of her charge of discrimination and civil service appeal. Cpt. Fletcher told Walker that she could end the problems by "correcting" her seniority date.

24. On or around October 24, 2002, Walker filed a complaint with the Department regarding the discriminatory and harassing behavior of Sgt. Monaghan.

25. On or around December 2, 2002, Walker filed a charge of discrimination with the MCAD and EEOC, against the Department regarding the actions of Monaghan and other employees of the Department. Walker complained that the Department had discriminated against her based on her gender, color, and sexual orientation, and interfered with her exercise and enjoyment of her civil rights.

26. On or around December 4, 2002, the Department received a statement from another officer who heard some of the discriminatory comments made by Sgt. Monaghan. Nevertheless, the Department decided that Walker's complaints against Sgt. Monaghan were "unfounded."

27. In or around June of 2003, Walker verbally reported to her supervisor that several members of the Department had refused to leave a pub after closing, in violation of the law ("Pub Incident Report").

28. After no action was taken as a result of her Pub Incident Report, Walker notified Chief Scott of what she believed was the illegal conduct that she reported in the Pub Incident Report.

3

29.    In or around August of 2003, Chief Scott retaliated against Walker for notifying him about the possible illegal activity she reported in the Pub Incident Report. Chief Scott issued a written reprimand stating that Walker had been insubordinate when she notified him of the Pub Incident report.

30.    In or around April of 2004, Chief Scott suspended Walker from work for one (1) day for appearing five to fifteen minutes late for court. Chief Scott partially justified this suspension based on the retaliatory written reprimand that he issued in August of 2003. Other employees of the Department were not similarly disciplined for arriving at court five to fifteen minutes late.

31.    In upholding the one (1) day suspension, the Mayor of Holyoke, Michael Sullivan, also mentioned the retaliatory written reprimand for insubordination in August, 2003.

32.    In or around September of 2004, Walker filed a written complaint with her supervisor, which stated that Sgt. Monaghan was ignoring her while they are performing their duties and verbally assaulting her. Walker stated that she believed that Sgt. Monaghan's insubordinate conduct posed a risk to her own safety and the safety of others.

33.    Less than two (2) weeks after Walker complained about Sgt. Monaghan and her safety concerns, Mayor Sullivan doubled a five (5) day suspension that had been issued earlier to Walker by Chief Scott.

34.    In or around November of 2004, Walker noticed that she was not hearing any dispatch calls over her car radio or hand held radio and, as a result, did not know where her subordinates were in the field.

35.    Walker believed that her supervisor, Lieutenant Eva O'Connell, had ordered the dispatchers to send calls via email, which would preclude Walker from hearing them. Walker believed that this practice posed a serious risk to the health and safety of the police officers and the public as well as herself.

36.    On or around November 4, 2004, Walker made a report to Chief Scott regarding the practice of sending dispatch calls via email (the "Dispatch Email Report"). Walker expressed her belief that such a practice was unsafe for the police officers and the public as well as herself.

37.    On or around November 10, 2004, within days of Walker's report to Chief Scott about the dispatch calls, Lt. O'Connell retaliated against Walker by reprimanding her about her failure to utilize the chain of command and reassigning her to inside duty.

38.   On or around November 20, 2004, Lt. O'Connell denied a request for a day off which Walker had submitted several days earlier so that she could care for an ill family member.

39.   Additionally, on November 20, 2004, Lt. O'Connell requested that Chief Scott place Walker on the sick leave abuser's list.

40.   In or around the end of November of 2004, Chief Scott suspended Walker for five (5) days for sick leave abuse. At the end of December of 2004, Mayor Sullivan increased this five (5) days suspension issued to ten (10) days.

41.   On or around December 20, 2004, Walker filed a complaint with Chief Scott about Lt. O'Connell's November 10th order that reassigned Walker to inside duty (the "Retaliatory Inside Assignment Complaint").

42.   In the Retaliatory Inside Assignment Complaint, Walker indicated that she believed that Lt. O'Connell had violated the law.

43.   Walker requested and obtained a right to sue letter from the EEOC on January 11, 2005.

44.   On or around January 18, 2005, Chief Scott retaliated against Walker for making complaints, including the Dispatch Email Report and the Retaliatory Inside Assignment Complaint, by suspending Walker for five (5) days. Chief Scott also requested that Mayor Sullivan consider additional disciplinary action against Walker.

45.   On or around February 15, 2005, Walker provided the City with written notice that it's retaliatory activities, policies, and/or practices were in violation of the Massachusetts Whistleblower Statute, Massachusetts General Laws, Chapter 149, Section 185. See Whistleblower Notice, dated February 15, 2005, attached hereto as Exhibit "A".

46.   On or around February 25, 2005, Lt. O'Connell, acted in a hostile and aggressive manner towards Walker. Lt. O'Connell abruptly and vigorously pulled a book out of Walker's hands, exacerbating an injury in Walker's shoulder. Additionally, Lt. O'Connell took stood up and took steps toward Walker in an aggressive, intimidating and hostile manner.

47.   On or around February 27, 2005, Walker filed a complaint with Chief Scott alleging that Lt. O'Connell engaged in retaliatory behavior and injured Walker in a physical confrontation. Walker also expressed concern for her physical safety.

48.   On or about March 7, 2005, Mayor Sullivan held a hearing on a retaliatory five (5) days suspension that was issued by Chief Anthony Scott to Walker on

January 18, 2005 in connection with Walker's complaints, including the Dispatch Email Report and the Retaliatory Inside Assignment Complaint.

49.  On or about March 18, 2005, Mayor Sullivan affirmed the retaliatory five (5) days suspension issued by Chief Scott on January 18, 2005 and added an additional suspension of fifteen (15) days without pay.

50.  On or around March 29, 2005, Walker filed her original complaint against the City in the United States District Court for the District of Massachusetts, alleging various claims including violations of Mass. Gen. Laws Ch. 151B, the Whistleblower Statute, Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), and violations of her rights under the First Amendment of the United States Constitution ("Original Complaint").

51.  One week after Walker filed her Original Complaint, Chief Scott again suspended Walker for five (5) days, this time in connection with Walker's complaint of February 27, 2005 regarding Lt. O'Connell retaliatory and abusive behavior.

52.  On or around April 12, 2005, Mayor Sullivan held a hearing on this suspension despite Walker's request for a continuance.

53.  On or around April 18, 2005, Mayor Sullivan affirmed Chief Scott's five (5) day suspension in connection with Walker's complaint regarding Lt. O'Connell retaliatory and abusive behavior.   Additionally, Mayor Sullivan terminated Walker's employment.  Mayor Sullivan's termination of Walker occurred less than three weeks after Walker filed her Original Complaint against the City.

54.  On May 4, 2005, Walker provided the City of Holyoke with her second written notice that the City's additional retaliatory activities, policies, and/or practices were in violation of the Massachusetts Whistleblower Statute, Massachusetts General Laws, Chapter 149, Section 185.  See Whistleblower Notice, dated February 15, 2005, attached hereto as Exhibit "B".

## COUNT I - DISCRIMINATION BASED ON GENDER
### (G.L. Ch. 151B)

55.  Paragraphs 1 through 54 are repeated, reiterated and realleged as if fully set forth herein.

56.  The City intentionally discriminated against Walker on the basis of her gender.

57.  The actions and conduct of the City, through its officials, agents and/or employees, violated Mass. Gen. Laws ch. 151B, § 4 (1)

6

58. As a result, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT II - DISCRIMINATION BASED ON GENDER
### (42 U.S.C. §2000)

59. Paragraphs 1 through 58 are repeated, reiterated and realleged as if fully set forth herein.

60. The City intentionally discriminated against Walker on the basis of her gender.

61. The actions and conduct of the City, through its officials, agents and/or employees, violated title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

62. As a result, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT III - DISCRIMINATION BASED ON RACE
### (G.L. Ch. 151B)

63. Paragraphs 1 through 62 are repeated, reiterated and realleged as if fully set forth herein.

64. The City intentionally discriminated against Walker on the basis of her race.

65. The actions and conduct of the City, through its officials, agents and/or employees, violated Mass. Gen. Laws ch. 151B, § 4 (1)

66. As a result, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT IV - DISCRIMINATION BASED ON RACE
### (42 U.S.C. §2000)

67. Paragraphs 1 through 66 are repeated, reiterated and realleged as if fully set forth herein.

68. The City intentionally discriminated against Walker on the basis of her race.

69. The actions and conduct of the City, through its officials, agents and/or employees, violated title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

70. As a result, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT V - DISCRIMINATION BASED ON SEXUAL ORIENTATION
### (G.L. Ch. 151B)

71. Paragraphs 1 through 70 are repeated, reiterated and realleged as if fully set forth herein.

72. The City intentionally discriminated against Walker on the basis of her sexual orientation.

73. The actions and conduct of the City, through its officials, agents and/or employees, violated Mass. Gen. Laws ch. 151B, § 4 (1)

74. As a result, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT VI: RACIAL HARASSMENT
### (G.L. Ch. 151B)

75. Walker repeats and reallaeges the allegations contained in paragraphs 1 through 74 as if full set forth herein.

76. The actions and conduct of the City, through its officials, agents, and/or employees, created a hostile work environment for Walker based on her race, in violation of Mass. Gen. Laws ch. 151B.

77. The hostile environment was sufficiently severe and pervasive as to interfere with Walker's ability to perform her duties and responsibilities.

78. As a result of the above-described actions, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

8

## COUNT VII: RACIAL HARASSMENT
### (42 U.S.C. §2000)

79.  Walker repeats and reallaeges the allegations contained in paragraphs 1 through 78 as if full set forth herein.

80.  The actions and conduct of the City, through its officials, agents, and/or employees, created a hostile work environment for Walker based on her race, in violation of title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

81.  The hostile environment was sufficiently severe and pervasive as to interfere with Walker's ability to perform her duties and responsibilities.

82.  As a result of the above-described actions, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT VIII: SEXUAL HARASSMENT
### (G.L. Ch. 151B)

83.  Walker repeats and reallaeges the allegations contained in paragraphs 1 through 82 as if full set forth herein.

84.  The actions and conduct of the City, through its officials, agents, and/or employees, created a hostile work environment for Walker based on her sex, in violation of Mass. Gen. Laws ch. 151B.

85.  The hostile environment was sufficiently severe and pervasive as to interfere with Walker's ability to perform her duties and responsibilities.

86.  As a result of the above-described actions, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT IX: SEXUAL HARASSMENT
### (42 U.S.C. §2000)

87.  Walker repeats and reallaeges the allegations contained in paragraphs 1 through 86 as if full set forth herein.

88.  The actions and conduct of the City, through its officials, agents, and/or employees, created a hostile work environment for Walker based on her sex, in

9

violation of title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

89. The hostile environment was sufficiently severe and pervasive as to interfere with Walker's ability to perform her duties and responsibilities.

90. As a result of the above-described actions, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress

## COUNT X: HARASSMENT BASED ON SEXUAL ORIENTATION
### (G.L. Ch. 151B)

91. Walker repeats and reallaeges the allegations contained in paragraphs 1 through 90 as if full set forth herein.

92. The actions and conduct of the City, through its officials, agents, and/or employees, created a hostile work environment for Walker based on her sexual orientation, in violation of Mass. Gen. Laws ch. 151B.

93. The hostile environment was sufficiently severe and pervasive as to interfere with Walker's ability to perform her duties and responsibilities.

94. As a result of the above-described actions, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT XI: RETALIATION
### (42 U.S.C. §2000)

95. Walker repeats and realleges the allegations contained in paragraphs 1 through 94 as if fully set forth herein.

96. Walker engaged in protected activities, including but not limited to opposing practices made unlawful by Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

97. The City, through its officials, agents, and/or employees, illegally retaliated against Walker for engaging in activities protected by title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

98. The City's retaliatory actions and conduct violate title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

99.  As a result, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT XII: RETALIATION
## (G.L. Ch. 151B)

100.  Walker repeats and realleges the allegations contained in paragraphs 1 through 99 as if fully set forth herein.

101.  Walker engaged in protected activities, including but not limited to opposing practices made unlawful by Mass. Gen. Laws ch. 151B.

102.  The City, through its officials, agents, and/or employees, illegally retaliated against Walker for engaging in activities protected by Mass. Gen. Laws ch. 151B.

103.  The City, through its agents, employees and servants, also attempted to coerce, intimidate, threaten and interfere with Walker's exercise of her rights granted or protected by Mass. Gen. Laws ch. 151B.

104.  The City's actions and conduct violate Mass. Gen. Laws ch. 151B, §§ 4(4) and 4(4A).

105.  As a result, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT XIII: RETALIATION
## (G.L. Ch. 149 §185)

106.  Walker repeats and realleges the allegations contained in paragraphs 1 through 105 as if fully set forth herein.

107.  Walker engaged in protected activities, including but not limited to disclosing activities, policies and practices  which Walker reasonably believed were violations of the law, or a rule or regulation promulgated pursuant to law; and disclosing activities, policies and practices which Walker reasonably believed were posing a risk to public health and safety.

108.  The City, through its officials, agents, and/or employees, illegally retaliated against Walker for engaging in activities protected by the Massachusetts Whistleblower Statute, Mass. Gen. Laws ch. 149, Section 185.

11

109. The City's actions and conduct violate Mass. Gen. Laws ch. 149, Section 185.

110. As a result, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT XIV - DISCRIMINATION BASED ON RACE
### (42 U.S.C. §1981)

111. Paragraphs 1 through 110 are repeated, reiterated and realleged as if fully set forth herein.

112. The City intentionally discriminated against Walker on the basis of her race.

113. The actions and conduct of the City, through its officials, agents and/or employees, violated title 42 U.S.C. § 1981.

114. As a result, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

## COUNT XV - RETALIATION BASED ON EXERCISE OF FIRST AMENDMENT RIGHTS
### (42 U.S.C. §1983)

115. Paragraphs 1 through 114 are repeated, reiterated and realleged as if fully set forth herein.

116. Walker engaged in speech activities which were protected by the First Amendment of the United States Constitution.

117. The City, through its officials, agents, and/or employees, retaliated against Walker for engaging in speech activities protected by the First Amendment of the United States Constitution.

118. The City's actions and conduct violate 42 U.S.C. § 1983.

119. As a result, Walker has suffered substantial damages, including lost income, damage to her reputation and career, and emotional distress.

THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.

WHEREFORE, the Plaintiff, Tammy Walker, hereby respectfully requests that this Honorable Court:

1.    Enter judgment in her favor on all Counts of the Complaint;
2.    Award compensatory damages;
3.    Award punitive damages;
4.    Award multiple damages under Mass. Gen. Laws ch. 149, Section 185;
5.    Award reasonable attorney's fees and costs;
6.    Award appropriate interest; and
7.    Award any other relief which this Court deems to be appropriate.

The Plaintiff, Tammy Walker
By Her Attorney,

Tani E. Sapirstein, Esq.
BBO #236850
SAPIRSTEIN & SAPIRSTEIN, P.C.
1341 Main Street, 3rd Floor
Springfield, MA 01103
Tel:    (413) 827-7500
Fax:   (413) 827-7797

Date:

K:\WP61\CASEFILE\Walker\Proposed Amended Complaint.wpd

EXHIBIT # A

SAPIRSTEIN & SAPIRSTEIN, P.C.
ATTORNEYS AT LAW
1341 MAIN STREET, 3RD FLOOR
SPRINGFIELD, MASSACHUSETTS 01103
TELEPHONE (413) 827-7500

JONATHAN C. SAPIRSTEIN*
TANI E. SAPIRSTEIN*
———
CARLY L. MASSEY

TELECOPIER (413) 827-7767
EMAIL: FIRM@SANDSLAW.COM
WWW.SANDSLAW.COM

*ALSO ADMITTED IN CONNECTICUT AND NEW YORK

February 15, 2005

Anthony R. Scott
Chief of Police, Holyoke Police Department
138 Appleton Street
Holyoke, MA 01040
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7002-0860-0004-9485-2186

Michael J. Sullivan
Mayor, City of Holyoke
536 Dwight Street
Holyoke, MA 01040
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7002-0860-0004-9485-2179

Re:   **Sergeant Tammy Walker**

Dear Sirs:

Please be advised that this office represents Sergeant Tammy Walker, a sergeant in the Holyoke Police Department.   Pursuant to the Massachusetts Whistleblower Statute, Massachusetts General Laws, Chapter 149, Section 185 (c)(1) (the "Whistleblower Statute"), and the case of Dirrane v. Brookline Police Department, et al, 315 F 3d. 65 (1st Circuit 2002) to the extent it applies, Sgt. Walker is hereby providing written notice of activities, policies, and/or practices which violate the Whistleblower Statute and a reasonable opportunity to correct such activities, policies, and/or practice.

In or around June of 2003, Sgt. Walker reported to her supervisor that several members of the Holyoke Police Department had refused to leave a pub after closing, in violation of the law.  After no action was taken as a result of her report, Sgt. Walker  filed a written report regarding this possible illegal conduct with the Chief of Police, Anthony R. Scott.  In or around August of 2003, Chief Scott issued a written reprimand to Sgt. Walker.  In the written reprimand, Chief Scott indicated that Sgt. Walker had been insubordinate when she filed her written report of the possible illegal activity with him. By reprimanding Sgt. Walker in retaliation for reporting possible illegal activity, the City of Holyoke violated the Whistleblower Statute.

1

In or around April of 2004, Chief Scott suspended Sgt. Walker from work for one (1) day for appearing five to fifteen minutes late for court. In his notice of suspension, Chief Scott indicated that the suspension was justified partially because Sgt. Walker had been given a written reprimand in August of 2003 for insubordination. In upholding Chief Scott's one (1) day suspension, the Mayor of Holyoke, Michael Sullivan, also mentioned the written reprimand for insubordination of August, 2003. By using the retaliatory reprimand as a basis for imposing unusually severe disciplinary action, the City of Holyoke violated the Whistleblower Statute.

In or around September of 2004, Sgt. Walker filed a written complaint with her supervisor that a subordinate co-worker was ignoring her while they were performing their duties and verbally assaulting her. She complained that she feared for her own safety and the safety of others as a result of the subordinate's conduct. Less than two (2) weeks after filing this complaint, Mayor Sullivan increased a five (5) day suspension issued to Sgt. Walker by Chief Scott to ten (10) days. It appears that Mayor Sullivan increased the severity of Sgt. Walker's discipline because she complained about activity which she reasonably believed was posing a risk to public health and safety. Such retaliatory actions violate the Whistleblower Statute.

In or around November of 2004, Sgt. Walker noticed that she was not hearing any dispatch calls over her radio and, as a result, did not know where her men were in the field. Sgt. Walker suspected that her supervisor, Lieutenant Eva O'Connell, had ordered that dispatch calls be sent to officers via email, precluding Sgt. Walker from hearing them. On or around November 5, 2004, Sgt. Walker filed a written report to Chief Scott regarding this situation. Sgt. Walker complained to Chief Scott that this situation was unsafe for the officers and the public. Within days of these complaints, Lt. O'Connell reprimanded Sgt. Walker about the chain of command and reassigned Sgt. Walker to inside duty. Soon after that, Lt. O'Connell denied Sgt. Walker's time off request at the last minute and requested that Sgt. Walker be placed on the sick leave abusers list. At or around the end of November of 2004, Chief Scott suspended Sgt. Walker for five (5) days for sick leave abuse. At the end of December of 2004, Mayor Sullivan increased the five (5) days suspension issued by Chief Scott to ten (10) days. It appears that the City of Holyoke has taken retaliatory actions against Sgt. Walker because she complained about activity which she reasonably believed was posing a risk to public health and safety. Such retaliatory actions violate the Whistleblower Statute.

Sgt. Walker requests that the City of Holyoke promptly correct these violations of the Whistleblower Statute. Please be advised that if the City fails to correct these violations of the Whistleblower Statute within thirty (30) days from the date of this letter, Sgt. Walker may elect to pursue a lawsuit against the City of Holyoke. If suit is filed against the City of Holyoke pursuant to the Whistleblower Statute, Sgt. Walker will seek any and all remedies available to her under statute or at common law.

Very truly yours,

Tani E. Sapirstein, Esq.

TES/ag

cc:    Ms. Tammy Walker

Members of Holyoke City Council:

John P. Brunelle
131 Vermont Street
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7002-0860-0004-9485-2162

Raymond H. Feyre
33 Longfellow Road
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7002-0860-0004-9485-2155

Kevin A. Jourdain
357 Jarvis Avenue
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7002-0860-0004-9485-2148

Marc E. Joyce
41 George Street
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7002-0860-0004-9485-2131

James M. Leahy
12 Park Slope
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7002-0860-0004-9485-2124

John P. Lecca
388 Pleasant Street
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7002-0860-0004-9485-2117

Diosdado Lopez
19 Springdale Avenue
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7002-0860-0004-9485-2100

Mark A. Lubold
111 Norwood Terrace
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7002-0860-0004-9485-2094

James A. McDermott
54 Clemente Street
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7002-0860-0004-9485-2087

Joseph M. McGiverin
27 Downing Avenue
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7002-0860-0004-9485-2070

Helen F. Norris
2090 Northampton Street
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7002-0860-0004-9485-2063

4

Elaine A. Pluta
72 Berkshire Street
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7002-0860-0004-9485-2056

Lillian Santiago
123 St. Kolbe Drive
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7002-0860-0004-9485-2049

Peter R. Tallman
10 Hendel Drive
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7002-0860-0004-9485-2032

John E. Whelihan
34 Merrick Avenue
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7002-0860-0004-9485-2025

K:\WP61\CASEFILE\Walker\whistleblower notice letter.wpd

EXHIBIT # _B_

SAPIRSTEIN & SAPIRSTEIN, P.C.
ATTORNEYS AT LAW
1341 MAIN STREET, 3RD FLOOR
SPRINGFIELD, MASSACHUSETTS 01103
TELEPHONE (413) 827-7500

JONATHAN C. SAPIRSTEIN*
TANI E. SAPIRSTEIN*
———
CARLY L. MASSEY

TELECOPIER (413) 827-7797
EMAIL: FIRM@SANDSLAW.COM
WWW.SANDSLAW.COM

*ALSO ADMITTED IN CONNECTICUT AND NEW YORK

May 4, 2005

Anthony R. Scott
Chief of Police, Holyoke Police Department
138 Appleton Street
Holyoke, MA 01040
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7004 1350 0005 6385 8562

Michael J. Sullivan
Mayor, City of Holyoke
536 Dwight Street
Holyoke, MA 01040
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7004 1350 0005 6385 8555

Re:   **Sergeant Tammy Walker**

Dear Sirs:

Please be advised that this office represents Tammy Walker, a former sergeant in the Holyoke Police Department ("Walker"). Pursuant to the Massachusetts Whistleblower Statute, Massachusetts General Laws, Chapter 149, Section 185 (c)(1) (the "Whistleblower Statute"), and the case of Dirrane v. Brookline Police Department, et al, 315 F 3d. 65 (1st Cir. 2002) to the extent it applies, Walker is hereby providing written notice of activities, policies, and/or practices which violate the Whistleblower Statute and a reasonable opportunity to correct such activities, policies, and/or practice.

On or around February 15, 2005, Walker provided the City with her first written notice that the City's retaliatory activities, policies, and/or practices were in violation of the Massachusetts Whistleblower Statute, Massachusetts General Laws, Chapter 149, Section 185. On or about March 7, 2005, Mayor Michael Sullivan held a hearing on a retaliatory five (5) days suspension without pay that was issued by Chief Anthony Scott to Walker. Chief Scott issued the five (5) days suspension because Walker made complaints, including complaints that her supervisor's actions violated the law and created public safety concerns. Chief Scott requested that Mayor Sullivan could consider additional disciplinary action against Walker.

1

Following the hearing, on or about March 18, 2005, Mayor Sullivan affirmed a retaliatory five (5) days suspension issued by Chief Scott and added an additional unpaid suspension of fifteen (15) days. Thus, the City of Holyoke ("City") took retaliatory actions against Walker because she complained about activity which she reasonably believed was violating the law and posing a risk to public health and safety. Additionally, the close proximity of this harsh disciplinary action to Walker's February 15, 2005 written notice, strongly indicates that the disciplinary action was taken in retaliation for Walker's exercise of her rights under the Whistleblower statute. Such retaliatory action violates the Whistleblower Statute.

On or around February 25, 2005, Lieutenant Eva O'Connell, Walker's direct supervisor, acted in a hostile and aggressive manner towards Walker. As Walker has recently made complaints about Lt. O'Connell, Walker believed that O'Connell's actions were retaliatory. On or around February 27, 2005, Walker filed a complaint with Chief Anthony Scott alleging that Lieutenant Eva O'Connell engaged in retaliatory behavior and injured Walker in a physical confrontation. Walker expressed concern for her physical safety.

On or around March 29, 2005, Walker filed a complaint against the City in the United States District Court for the District of Massachusetts, alleging various claims including violations of Mass. Gen. Laws Ch. 151B, the Whistleblower Statute, Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), and violations of her rights under the First Amendment of the United States Constitution. One week later, Chief Scott suspended Walker for five (5) days regarding Walker's February 27, 2005 complaint. On or around April 12, 2005, Mayor Sullivan held a hearing on this suspension despite Walker's request for a continuance. On or around April 18, 2005, Mayor Sullivan terminated Walker's employment. Mayor Sullivan's termination of Walker occurred less than three weeks after Walker filed her complaint against the City with the U.S. District Court. It appears that the City took retaliatory action against Walker in violation of several laws, including but not limited to the Whistleblower Statute.

Sgt. Walker requests that the City promptly correct these violations of the Whistleblower Statute. Please be advised that if the City fails to correct these violations of the Whistleblower Statute within thirty (30) days from the date of this letter, Walker may elect to amend her lawsuit against the City to include these allegations.

Very truly yours,

Tani E. Sapirstein, Esq.

TES/ag

2

cc:    Ms. Tammy Walker

Members of Holyoke City Council:

John P. Brunelle
131 Vermont Street
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7004 1350 0005 6385 8548

Raymond H. Feyre
33 Longfellow Road
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7004 1350 0005 6385 8531

Kevin A. Jourdain
357 Jarvis Avenue
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7004 1350 0005 6385 8524

Marc E. Joyce
41 George Street
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7004 1350 0005 6385 8517

James M. Leahy
12 Park Slope
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7004 1350 0005 6385 8500

John P. Lecca
388 Pleasant Street
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.* 7004 1350 0005 6385 8494

3

Diosdado Lopez
19 Springdale Avenue
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.*  7004 1350 0005 6385 9200

Mark A. Lubold
111 Norwood Terrace
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.*  7004 1350 0005 6385 9170

James A. McDermott
54 Clemente Street
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.*  7004 1350 0005 6385 9194

Joseph M. McGiverin
27 Downing Avenue
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.*  7004 1350 0005 6385 9187

Helen F. Norris
2090 Northampton Street
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.*  7004 1350 0005 6385 9163

Elaine A. Pluta
72 Berkshire Street
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.*  7004 1350 0005 6385 9156

Lillian Santiago
123 St. Kolbe Drive
Holyoke, MA
*CERTIFIED MAIL/RETURN RECEIPT REQUESTED*
*RECEIPT NO.*  7004 1350 0005 6385 9149

4

Peter R. Tallman
10 Hendel Drive
Holyoke, MA
***CERTIFIED MAIL/RETURN RECEIPT REQUESTED***
***RECEIPT NO.*** 7004 1350 0005 6385 9132

John E. Whelihan
34 Merrick Avenue
Holyoke, MA
***CERTIFIED MAIL/RETURN RECEIPT REQUESTED***
***RECEIPT NO.*** 7004 1350 0005 6385 9125

K:\WP61\CASEFILE\Walker\demand 2.wpd

5