UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 05-30074-MAP

| | |
|---|---|
| TAMMY WALKER,<br>    Plaintiff | )<br>)<br>) |
| v. | )<br>) |
| CITY OF HOLYOKE,<br>    Defendant | )<br>) |

**DEFENDANT'S MEMORANDUM OF LAW
IN REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The defendant, City of Holyoke (the "City"), hereby replies to the plaintiff's, Tammy Walker ("Walker"), opposition to the City's motion for summary judgment as follows:

At the outset, the City moves to strike Walker's Exhibits 1, 2, 3 and 4. In his Affidavit, Attorney Hudson states each of these exhibits is a deposition transcript.[1] In fact, however, each of these exhibits is actually a redacted copy of the transcript and is not a true and accurate or certified copy as required by *Rule 56* of the *Federal Rules of Civil Procedure*. As such, these Exhibits are not properly before this Court in the form submitted by Walker.

With respect to Walker's response to the City's "Concise Statement of Undisputed Material Facts," the City stands by its facts as accurate and supported as reflected by the Exhibits which support its Memorandum in Support of its Motion For Summary Judgment.

---

[1] Exhibit 1 is a copy of Tammy Walker's deposition, Vol. I; Exhibit 2 is a copy of Jorge Rodriguez's deposition; Exhibit 3 is a copy of Chief Scott's deposition; and Exhibit 4 is a copy of Alan Fletcher's deposition.

1

**REPLY TO WALKER'S STATEMENT OF ADDITIONAL
FACTS AS TO WHICH WALKER CLAIMS THERE IS
A GENUINE ISSUE TO BE TRIED**

At pages 17 through 30 of her opposition, Walker sets forth 145 statements of "additional facts" as to which she "claims there is a genuine issue to be tried." However, many of these facts are not in dispute and, therefore, do not constitute genuine issues of material fact to be tried pursuant to *Rule 56 of the Federal Rules of Civil Procedure*.[2] In fact, many of these facts are set forth in the City's Memorandum in Support of its Motion for Summary Judgment. In particular, the City responds to each statement as follows:

1. Undisputed. Furthermore, the City states that this is not an issue of fact to be tried since it is irrelevant and immaterial to Walker's claims against the City.[3]

2. Undisputed. Furthermore, the City states that this is not an issue of fact to be tried since it is irrelevant and immaterial to Walker's claims against the City.[4]

3. Disputed.

4. Undisputed. Furthermore, the City states that this is not an issue of fact to be tried since it is irrelevant and immaterial to Walker's claims against the City.

5. Undisputed.

6. Undisputed that Walker's position with DEA was terminated in May of 2002.

7. Undisputed.

8. Undisputed.

9. Undisputed.

---

[2] In fact, Walker wastes this Court's time by repeating statements of fact already addressed by her in the first 16 pages of her opposition and by reiterating the same facts at pages 17 through 30 of her opposition. Moreover, the City's Concise Statement of Material Facts clearly contains Walker's allegations. As such, it was not necessary for Walker to restate these allegations in her opposition.
[3] The pages cited by Walker in support of these facts contain redacted statements.
[4] The page cited by Walker in support of this fact contains redacted statements.

2

366908v1

10. Undisputed.

11. Disputed.

12. Undisputed.

13. Undisputed that Walker and the City agreed on the seniority date of June 9, 1999 based on the information provided by Walker.

14. Undisputed.

15. Undisputed.

16. Disputed to the extent that Walker's deposition (Walker's Exhibit 1) does not contain this "fact." However, the City states that this is not an issue of fact to be tried since it is irrelevant and immaterial to Walker's claims against the City.

17. Undisputed.

18. It is undisputed that Walker is alleging these facts. However, there is no basis or evidence in the record to support these allegations.

19. It is undisputed that Walker is alleging these facts. However, there is no basis or evidence in the record to support these allegations.

20. It is undisputed that Walker is alleging these facts. However, there is no basis or evidence in the record to support these allegations.

21. It is undisputed that Walker is alleging these facts. However, there is no basis or evidence in the record to support these allegations.

22. Undisputed.

23. Undisputed.

24. It is undisputed that Walker is alleging these facts. However, there is no basis or evidence in the record to support these allegations.

25. Undisputed.

26. Undisputed.

27. Disputed. Captain Fletcher asked Walker to prepare a written report of the incident and submit it to him.[5]

28. Undisputed.

29. It is undisputed that Walker is alleging these facts, however, there is no basis or evidence in the record to support these allegations.

30. It is undisputed that Walker is alleging these facts. However, there is no basis or evidence in the record to support these allegations.

31. It is undisputed that Walker is alleging these facts. However, there is no basis or evidence in the record to support these allegations.

32. It is undisputed that Walker is alleging these facts. However, there is no basis or evidence in the record to support these allegations.

33. Undisputed.

34. It is undisputed that Walker is alleging these facts. However, there is no basis or evidence in the record to support these allegations.

35. It is undisputed that Walker is alleging these facts. However, there is no basis or evidence in the record to support these allegations.

36. Undisputed.

37. It is undisputed that Walker is alleging these facts. However, there is no basis or evidence in the record to support these allegations.

---

[5] *See* City's Memorandum at ¶90, p.15.

38.     It is undisputed that Walker is alleging these facts. However, there is no basis or evidence in the record to support these allegations.

39.     Undisputed that Walker so testified.

40.     It is undisputed that Walker is alleging these facts. However, there is no basis or evidence in the record to support these allegations.

41.     It is undisputed that Walker is alleging these facts. However, there is no basis or evidence in the record to support these allegations.[6]

42.     Undisputed that Walker was first disciplined on August 7, 2003 for failure to follow the chain of command with respect to the Elizur's Pub incident. (*See* City's Memorandum at ¶ 107, p. 18 and Exhibits 1 and 38 thereto).

43.     Undisputed. However, the City notes that page 192 of Walker's deposition (Walker's Exhibit 1) is partially redacted and does not contain the "facts" alleged by Walker.

44.     Undisputed. As set forth above, Captain Fletcher asked Walker to prepare a written report of the incident and submit it to him.[7]

45.     It is undisputed that Walker is alleging these facts. However, there is no basis or evidence in the record to support these allegations.

46.     It is undisputed that Walker is alleging these facts. However, there is no basis or evidence in the record to support these allegations.

47.     It is undisputed that Walker is alleging these facts. However, there is no basis or evidence in the record to support these allegations. As set forth several times above, Captain Fletcher asked Walker to prepare a written report of the incident and submit it to him.[8]

---

[6] This statement was made by Walker at p. 184 of her deposition, not page 18 as cited by Walker.
[7] *See* City's Memorandum in support of its Motion For Summary Judgment at ¶107, p. 18.
[8] *See* City's Memorandum in support of its Motion For Summary Judgment at ¶90, p. 15.

5

48. It is undisputed that Walker is alleging these facts. However, there is no basis or evidence in the record to support these allegations.

49. Undisputed.

50. Undisputed.

51. Undisputed.

52. Undisputed.

53. Undisputed that on July 23, 2004 at 8:39 p.m. Dispatcher Brenda Therrien transferred a call (Call No. 04-26734) to Walker stating: "A woman with some information Sarge, she wants to give it, I'm not taking it."[9]

54. Undisputed.

55. Undisputed. Furthermore, the City states that this is not an issue of fact to be tried since it is irrelevant and immaterial to Walker's claims against the City.

56. Undisputed. Furthermore, the City states that this is not an issue of fact to be tried since it is irrelevant and immaterial to Walker's claims against the City.

57. Undisputed. Furthermore, the City states that this is not an issue of fact to be tried since it is irrelevant and immaterial to Walker's claims against the City.

58. Undisputed as already set forth at ¶ 8 above.

59. As already set forth at ¶ 18 above, it is undisputed that Walker is alleging these facts. However, there is no basis or evidence in the record to support these allegations.

60. Undisputed. Furthermore, the City states that this is not an issue of fact to be tried since it is irrelevant and immaterial to Walker's claims against the City.

61. Undisputed as already set forth at ¶ 8 and ¶ 58 above.

---

[9] See City's Memorandum in support of its Motion For Summary Judgment at ¶119, p.21.

62. Undisputed. Furthermore, the City states that this is not an issue of fact to be tried since it is irrelevant and immaterial to Walker's claims against the City.

63. Undisputed. Furthermore, the City states that this is not an issue of fact to be tried since it is irrelevant and immaterial to Walker's claims against the City.

64. Undisputed that Rodriguez so testified. Rodriguez further testified:

> Q. But do you know for certain that he was shown the statement that you gave regarding the WMLEC Internal Affairs investigation?
>
> MR. HUDSON: Objection.
>
> THE WITNESS: I cannot say for certain.[10]

65. Undisputed that Rodriguez so testified. However, this incident allegedly concerned Wagner NOT Walker and is irrelevant and immaterial to Walker's claims against the City.

66. Undisputed that Rodriguez so testified. However, this incident allegedly concerned Wagner NOT Walker and is irrelevant and immaterial to Walker's claims against the City.

67. Undisputed that Rodriguez stated that he believes Lt. Fournier does not fairly work up cases because "everything goes to the Chiefs (sic.) side and the Chiefs (sic.) way."[11]

68. Undisputed.

69. Undisputed that Rodriguez testified that he heard those comments.

70. Undisputed. However, Rodriguez admitted: "I have no idea who is doing it" and that he could not be certain that it was Sgt. Monaghan's voice.[12]

---

[10] See Walker's Exhibit 2, Deposition of Rodriguez at p. 54.
[11] See Walker's Exhibit 2, Deposition of Rodriguez at p. 64.
[12] See City's Memorandum in support of its Motion For Summary Judgment at ¶¶ 38 and 40, p.7.

366908v1

71. Undisputed that Rodriguez testified that he heard the comments in November 2002, nearly five months after Walker claims she heard the comment.[13]

72. Undisputed that Rodriguez so testified. He also testified that the song could be relevant to a heterosexual relationship as well.[14]

73. Undisputed that Rodriguez testified that he "probably" observed Sgt. Monaghan "playing around on the WMLEC." He also admitted that he played around on WMLEC himself and that "[a]lmost every officer was doing that, just playing with the WMLEC and saying things over the air with WMLEC."[15]

74. Undisputed.

75. Undisputed.

76. Undisputed.

77. Disputed to the extent that Rodriguez testified that Walker was usually "supervising in the streets" riding in her cruiser when he heard these transmissions.[16]

78. Undisputed that Rodriguez so testified.

79. Undisputed. However, he could not recall how many months this took place.[17]

80. Undisputed that Rodriguez stated he heard Emile Morales meow "a few times." He stated that Morales, a Hispanic, did it as a joke and that Morales got along with Walker.[18]

81. Undisputed that Rodriguez so testified.

82. Undisputed that Rodriguez so testified.

---

[13] See City's Memorandum in support of its Motion For Summary Judgment at ¶36, p.6.
[14] See Walker's Exhibit 2, Deposition of Rodriguez at pp. 83-84.
[15] See Walker's Exhibit 2, Deposition of Rodriguez at p. 84.
[16] See Walker's Exhibit 2, Deposition of Rodriguez at p. 105.
[17] See Walker's Exhibit 2, Deposition of Rodriguez at p. 96.
[18] See Walker's Exhibit 2, Deposition of Rodriguez at pp. 96-97.

366908v1

83. Disputed to the extent that page 107 of Rodriguez deposition (Walker's Exhibit 2) has been redacted and does not contain the "facts" alleged by Walker.

84. Undisputed that Rodriguez so testified.

85. Undisputed that Rodriguez so testified. Rodriguez also testified that he could not remember who made any such comment or when any such comment was made.[19]

86. Undisputed that Rodriguez so testified. However, Rodriguez also admitted that he could not remember who made the comment.[20]

87. Undisputed that Rodriguez so testified.

88. Undisputed.

89. Undisputed that Rodriguez so testified.

90. Undisputed that Rodriguez so testified. However, the City states that this is not an issue of fact to be tried since it is irrelevant and immaterial to Walker's claims against the City.

91. Undisputed that Rodriguez so testified. However, the City states that this is not an issue of fact to be tried since it is irrelevant and immaterial to Walker's claims against the City.

92. Undisputed that Rodriguez so testified.

93. Undisputed that Rodriguez so testified. However, the City states that this is not an issue of fact to be tried since it is irrelevant and immaterial to Walker's claims against the City.

---

[19] See Walker's Exhibit 2, Deposition of Rodriguez at pp. 111-112.
[20] See Walker's Exhibit 2, Deposition of Rodriguez at p. 117.

366908v1

94. Disputed. Rodriguez testified that Sgt. Garcia was present once when Rodriguez heard a meowing sound over the radio.[21] Also, it is important to note that WMLEC is available to many police departments, not just Holyoke. [22]

95. Undisputed that Rodriguez so testified.

96. Disputed. These "facts" are not supported by the deposition testimony cited by Walker. Furthermore, these "facts" are not genuine issues to be tried in this case since they are irrelevant and immaterial to Walker's claims against the City.

97. Undisputed that Rodriguez so testified.

98. Undisputed.

99. Undisputed that Rodriguez so testified.

100. Disputed to the extent that page 47 of Fletcher's deposition (Walker's Exhibit 4) does not contain the "facts" alleged by Walker.

101. Undisputed.

102. Undisputed.

103. Undisputed.

104. Undisputed.

105. Undisputed.

106. Undisputed.

107. Undisputed.

108. Undisputed. Furthermore, the City states that this is not an issue of fact to be tried since it is irrelevant and immaterial to Walker's claims against the City.[23]

---

[21] See Walker's Exhibit 2, Deposition of Rodriguez at pp. 141-142.
[22] See Exhibit 5 to City's Memorandum in Support of Motion for Summary Judgment at p. 69.

366908v1

109. Undisputed. Furthermore, the City states that this is not an issue of fact to be tried since it is irrelevant and immaterial to Walker's claims against the City.

110. Undisputed.

111. Undisputed.

112. Undisputed.

113. Undisputed. [24]

114. Undisputed. Furthermore, the City states that this is not an issue of fact to be tried since it is irrelevant and immaterial to Walker's claims against the City.

115. Undisputed that Manuel Febo, a white male, ethnic background Hispanic, replaced Walker.

116. Undisputed that Chief Scott testified that there are two female officers in supervisory positions under his command.

117. Undisputed.

118. Undisputed.

119. Undisputed.

120. Undisputed that Chief Scott testified that he is not permitted to conduct job performance evaluations by contract.

121. Undisputed that Chief Scott testified that it is his practice every time he issues a suspension to anyone that he includes "past discipline that was taken."

122. Undisputed.

123. Undisputed.

---

[23] Page 124 of the deposition transcript (Exhibit 4) cited by Walker in support of this undisputed fact contains redacted statements.
[24] Page 8 of the deposition transcript (Exhibit 3) cited by Walker in support of this undisputed fact contains redacted statements.

124. Undisputed and repetitive.

125. Undisputed and repetitive.

126. Undisputed.

127. Undisputed.

128. Undisputed that Chief Scott denied Walker's request because Walker fabricated the underlying incident and she was not on duty at the time.

129. Disputed to the extent that Chief Scott could not recall whether he told Walker that she needed to provide medical proof of injury at the time of his deposition.

130. Undisputed.

131. Undisputed.[25]

132. Undisputed and repetitive.[26]

133. Undisputed and repetitive.

134. Undisputed and repetitive.

135. It is undisputed that Walker is alleging these facts. However, there is no basis or evidence in the record to support these allegations.

136. Undisputed.

137. Undisputed.

138. Undisputed.

139. Undisputed.

140. Undisputed and repetitive.

---

[25] Page 127 of the deposition transcript (Exhibit 3) cited by Walker in support of this undisputed fact contains redacted statements.
[26] Walker does not attach any copy of Sgt. Monaghan's deposition in support of this undisputed fact.

366908v1

141. Undisputed that Mayor Sullivan affirmed the five (5) day suspension issued by Chief Scott.[27]

142. Undisputed.[28]

143. Undisputed.

144. Undisputed that Sgt. Wagner voluntarily retired on March 7, 2006.[29]

145. Undisputed that Mayor Sullivan found that there was "just cause" to suspend Sgt. Wagner and to discharge Sgt. Wagner and that, "but for his voluntary retirement, discharge would be imposed."[30]

## REPLY TO WALKER'S STATEMENT OF DISPUTED ISSUES OF MATERIAL FACT

With respect to Walker's Statement of Disputed "Issues" of Material Fact, the City concedes that Issue Nos. 1, 2 and 3 are issues raised by Walker in this case and are issues properly before this Court on summary judgment. The City disputes Issue No. 4 since it did in fact include Jorge Rodriguez'a IOC in its Memorandum in support of its Motion For Summary Judgment as Exhibit 16.

## ARGUMENT

I. **THIS COURT SHOULD ENTER JUDGMENT IN FAVOR OF THE CITY BECAUSE WALKER HAS FAILED TO ESTABLISH SUFFICIENT EVIDENCE TO DEFEAT THE CITY'S MOTION FOR SUMMARY JUDGMENT.**

In order to defeat a motion for summary judgment, the nonmoving party must "produce the requisite quantum of evidence to enable [her] to reach the jury with [her] claim." *White's News v. The Hearst Corp.*, 669 F.2d 14, 17 (1st Cir. 1982)(internal quotations omitted). The

---

[27] *See* Walker's Exhibit 15.
[28] The City does not know what is meant by the word "amended" in this statement. For purposes of this reply the City assumes that this is a typographical error.
[29] *See* Walker's Exhibit 19.
[30] *See* Walker's Exhibit 19.

nonmoving party must establish the existence of an issue of fact "which is both 'genuine' and material.'" *Id*. *at 18* (internal quotations omitted). "A material issue is one which affects the outcome of the litigation. To be considered genuine, a material issue must be established by sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. (ellipses and citations omitted). The nonmoving party is "not entitled to build [her] case on the gossamer threads of whimsey, speculation and conjecture." *Id. at 19* (internal quotations omitted). The plaintiff must present "factual data" in order to defeat a motion for summary judgment. *Id. at 18*. Arguments in a legal memoranda are not sufficient to defeat summary judgment. *Id*. In fact, mere assertions in an affidavit, unaccompanied by documentary support, are insufficient to defeat a motion for summary judgment. See *Albright v. Federal Deposit Ins. Corp.*, 1994 U.S. App. LEXIS 6206, *16-18 (1st Cir.); *Massachusetts Higher Educ. Assistance Corp. v. Whelan*, 1995 Mass. Super. LEXIS 127, *4-6; *LaLonde v. Eissner*, 405 Mass. 207, 209 (1989).

In this instance, Walker has failed to establish sufficient evidence of any "genuine" issue of "material" fact to defeat the City's motion for summary judgment. As set forth above, none of the "material" issues in this case are in dispute. Walker's bare allegations and speculations unaccompanied by documentary support are not sufficient to defeat the City's motion for summary judgment as a matter of law. As such, this Court should enter judgment in favor of the City on all counts of the complaint.

II.  **THIS COURT SHOULD ENTER JUDGMENT IN FAVOR OF THE CITY ON WALKER'S CLAIMS OF GENDER AND SEXUAL ORIENTATION DISCRIMINATION BECAUSE WALKER HAS FAILED TO SHOW THAT SGT. WAGNER IS A SIMILARLY SITUATED COMPARATOR.**

With respect to her discrimination claims under *Title VII* and *M.G.L. c. 151B*, Walker outlines the appropriate three-stage *McDonnell Douglas* burden-shifting analysis. However,

14

Walker fails to address the first stage of the analysis, that is, that she was able to perform her job duties at an acceptable level to support her claims of discrimination. *Sbrogna v. ChipCom Corp.*, 1997 Mass. Super. LEXIS 271, *10; *Beal v. Board of Selectmen of Hingham*, 419 Mass. 535, 544-545 (1995). In fact, Walker fails to produce any admissible evidence with respect to her ability to perform her job duties. As such, Walker has failed to make out a *prima facie* case of discrimination and the City is entitled to judgment on Walker's claims under *Title VII* and *G.L. c. 151B* as a matter of law.

In addition, Walker does not dispute that the City has articulated a legitimate nondiscriminatory reason for terminating Walker, namely, poor job performance. Instead, Walker proceeds to the third stage of the analysis and claims that she suffered disparate treatment and that "she was similarly situated with Sergeant Robert Wagner (a straight male) who shared the same job as [Walker.]"[31] In particular, Walker claims "that she was treated differently for her on air programming errors, than a similarly situated straight male Holyoke Police Sergeant [Sgt. Wagner]."[32] Walker alleges that the City terminated her employment but did not terminate Sgt. Wagner despite the fact that there were "**more** compelling reasons" for terminating Sgt. Wagner than there were for terminating her.[33]

It is true that "summary judgment is disfavored in disparate treatment cases because the issue of discriminatory intent is a factual question." *Swallow v. Fetzer Vineyards*, 46 Fed. Appx. 636, 644 (1st Cir. 2002)(internal quotations omitted). However, summary judgment is appropriate "if the plaintiff is unable to present admissible evidence of the defendant's

---

[31] *See* Walker's Opposition at p. 34.
[32] *See* Walker's Opposition at p. 34.
[33] *See* Walker's Opposition at p. 35 (emphasis added).

discriminatory intent, motive, or state of mind so as to meet his or her burden," which is the case here. *Id*. (internal quotations omitted).

"Evidence that other similarly situated employees were disciplined differently can be evidence of discriminatory motive." *Id*. "To show that two individuals are similarly situated for purposes of showing disparate treatment, a plaintiff must identify and relate **specific instances** where persons similarly situated **in all relevant aspects** were treated differently." *Id. at 648* (internal quotation omitted)(emphasis added). "The alleged offenses do not need to be identical, but 'must be of comparable seriousness.'" *Id*. (quoting *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 130 (1997)). The plaintiff must show that she was similarly situated to the other employee in terms of "performance, qualifications and conduct, without such differentiating or mitigating circumstances that would distinguish their situations." *Id*. (internal quotations omitted). "The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 20 (1st Cir. 1999). Two employees are not considered similarly situated "when the offense each is accused of is not the same." *Williams v. Frank*, 757 F. Supp. 112, 119 (D. Mass. 1991), aff'd, 959 F.2d 230 (1st Cir. 1992). Furthermore, employees are not considered similarly situated "where their work records are not comparable." *Id*.

In this instance, Sgt. Wagner and Walker are clearly not similarly situated comparators. First, it is unknown what Walker means when she states that she "was treated differently for her **on air programming errors**" than Sgt. Wagner since the City is not aware of any "on air programming errors" by either Walker or Wagner. Second, the only similarities between Walker and Wagner are that both individuals held the position of sergeant in the Department and both

16

were the subject of progressive discipline within the Department. These minor similarities are not sufficient to establish disparate treatment as a matter of law.

By way of background, Sgt. Wagner joined the Holyoke Police Department (the "Department") on October 10, 1975.[34] He was promoted to sergeant on January 3, 1982. *Id*. In July 1991, Wagner was promoted to Chief of Police. In September 1994, Wagner resigned as Chief and resumed his rank as sergeant. In January 1995, the Massachusetts Attorney General's office and the Massachusetts Commission Against Discrimination began investigating the Department for alleged wrongdoing. Wagner cooperated with the investigation. In February 1997, Wagner went to the media with information concerning "possible criminal corruption" in the Department. In fact, Wagner was quoted on several occasions in the *Valley Advocate* newspaper. On March 3, 1997, Wagner was suspended for thirteen days for providing confidential information and documentation to the *Valley Advocate*, among other things. Ultimately, Wagner "received numerous suspensions and reprimands – some allegedly in response to various disclosures and public statements made by Wagner, but others for independent instances of insubordination or violations of departmental regulations."[35]

Wagner was scheduled to retire on March 7, 2006 and, in fact, he did voluntarily retire on that date.[36] At that time, there was an appeal pending on two five-day suspensions (05-019 and 05-027) issued to Wagner.[37] On March 31, 2006, Mayor Michael J. Sullivan issued his decision on the appeal finding that there was just cause to suspend Wagner for five days on both matters

---

[34] These facts are set forth in *Wagner v. City of Holyoke*, 341 F. Supp. 2d 78, 83 (D. Mass. 2003), aff'd, 404 F.3d 504 (1st Cir. 2005)..
[35] *Wagner v. City of Holyoke*, 404 F. 3d 504, 507 (1st Cir. 2005), cert. denied, 546 U.S. 977 (2005).
[36] *See* Walker's Exhibit No. 19 at p. 1.
[37] *See* Walker's Exhibit No. 19.

366908v1

and that there was just cause to terminate Wagner for the incidents.[38] The Mayor stated that "but for his voluntary retirement, discharge would be imposed."[39]

Based on the foregoing, Walker cannot meet her burden of showing disparate treatment on the grounds that she was treated differently than another similarly situated employee. First, Walker and Wagner were not disciplined for the same offenses. Walker was disciplined for various matters including: failure to follow the chain of command, appearing late for court without excuse, abusing sick leave, making numerous unfounded complaints against supervisors, failure to follow terrorism threat protocol, and a threatening confrontation with her supervisor. Wagner was primarily disciplined for public disclosures and infractions arising from his involvement in an investigation of Department corruption. Second, Walker and Wagner were not treated differently. Both Walker and Wagner were subject to the Department's progressive discipline plan. Walker was ultimately terminated for her poor job performance. In fact, Wagner would have been terminated for his poor job performance, but for the fact that he achieved the years of service necessary to retire and he chose to voluntarily retire before the final disciplinary decision (termination) was issued against him. Finally, Walker's and Wagner's employment history is dissimilar in that Wagner had many more years of service and had even achieved the rank of Chief. As such, this Court should enter judgment in favor of the City on Walker's discrimination claims under *Title VII* and *M.G.L. c. 151B*.

---

[38] *See* Walker's Exhibit No. 19.
[39] *See* Walker's Exhibit No. 19.

366908v1

III. **THIS COURT SHOULD ENTER JUDGMENT IN FAVOR OF THE CITY ON WALKER'S CLAIMS OF GENDER AND SEXUAL ORIENTATION DISCRIMINATION BECAUSE WALKER HAS FAILED TO PRODUCE CIRCUMSTANTIAL EVIDENCE OF DISCRIMINATORY BIAS.**

Walker cites case law to the effect that unlawful and discriminatory bias of an employer can be inferred by circumstantial evidence that: (1) the employer used subjective criteria in making employment decisions; (2) the employer failed to follow its own policies or decisions in making the employment decision; and (3) statistical evidence shows a general pattern of discrimination in work force composition.[40] However, Walker fails to cite a single fact or any admissible evidence in this case which demonstrates that the City acted with discriminatory bias in terminating her employment.

If this Court finds that Walker meets her initial burden under the *McDonnell Douglas* analysis, she still must "adduce admissible evidence" of the City's "discriminatory intent, motive, or state of mind" in order to survive summary judgment. *Adamson v. Wyeth Pharmaceuticals*, 2005 U.S. Dist. LEXIS 20579, *51-52 (D. Mass.). In order to do this, Walker must adduce "competent evidence" that the City's reasons for terminating her were mere pretexts masking discriminatory animus. *Id.* at *50; *Sullivan v. Liberty Mut. Ins. Co.*, 444 Mass. 34, 55-56 (2005). Walker must "present evidence of **specific facts** which would enable a jury to find that the reason given was not only a sham, but a sham intended to cover up the employer's real motive: discrimination." *Runyon v. Massachusetts Institute of Technology*, 871 F. Supp. 1502, 1510 (D. Mass. 1994)(emphasis added). Walker's "burden cannot be met merely by disputing or refuting the [City's] stated reason for the action at issue." *Id*. Where there is "no statistical evidence, no demonstration of discriminatory corporate policies, no instances of disparate treatment, no invidious pattern of impermissible discharges," a plaintiff cannot survive summary

---

[40] *See* Walker's Opposition at pp. 35-36.

366908v1

judgment. *Id. at 1511* (internal quotations omitted). With respect to statistical evidence, in particular, Walker must produce evidence of "probative value" together with "expert analysis of the statistics" to "make a clear showing of discriminatory hiring practices" as opposed to some non-discriminatory explanation. <u>Adamson</u>, supra at *52-57; <u>Sullivan</u>, supra at 55-56 (plaintiff's statistical evidence fails to eliminate other explanations for disproportionate statistics).

In this instance, Walker has failed to adduce any circumstantial evidence of discriminatory bias by the City. In particular, as set forth above, Walker has failed to adduce evidence of disparate treatment. She has failed to adduce evidence that the City's criteria for terminating her employment was a pretext for discriminatory bias. She has failed to identify any City policy or guideline that the City failed to follow with respect to her termination. Finally, she has failed to adduce any statistical evidence showing a pattern of discrimination by the City. As such, this Court should enter judgment in favor of the City on Walker's discrimination claims under *Title VII* and *M.G.L. c. 151B*.

## CONCLUSION

In light of the foregoing, this Court should enter judgment in favor of the defendant, City of Holyoke, on all counts of the amended complaint against it.

The Defendant,
CITY OF HOLYOKE,
By Its Attorneys
MORRISON MAHONEY LLP

I hereby certify that this document, filed through the ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on August 9, 2007.

/s/ Carole Sakowski Lynch

   /s/ Carole Sakowski Lynch
Carole Sakowski Lynch, BBO# 547718
1500 Main Street, Suite 2400
P.O. Box 15387
Springfield, MA  01115-5387
(413) 737-4373
(413) 739-3125 (Fax)

366908v1